I respectfully dissent from the majority's opinion. I cannot accede to their conclusion that the statute of limitations in this case did not begin to run until June 1995, when appellants learned that appellees had failed to disclose that the foundation had been repaired.
R.C. 2305.09(D) provides that in an action for fraud, the cause of action does not accrue until the fraud is discovered. However, discovery is not limited to the actual discovery of fraud, rather, it extends to include what might have been discovered by the exercise of due diligence under the existing circumstances. Copeland v. Delvaux (1993),89 Ohio App.3d 1, 5. "`Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence.'" Id. at 6, quoting AuRustproofing Ctr., Inc. v. Gulf Oil Corp. (C.A.6, 1985), 755 F.2d 1231,1237.
By the end of 1994, appellants had sufficient information about problems with their property that they had a duty then to further inquire into the matter with due diligence. On November 23, 1994, Vallen Contractors Inc. prepared a cost estimate for the removal of substandard soil. The estimated cost of the project was $28,500. The implications of this cost estimate were further amplified when Alan Esser ("Esser"), a soil engineer retained by appellants, advised them to consider filing a lawsuit based on what he had observed of the soil conditions on the property. Esser made this recommendation at the end of 1994. Therefore, this writer is of the opinion that the statute of limitations began to run, at the latest, in December 1994. Appellants were fully aware of a potential fraud at that point and had a duty to promptly conclude an investigation to determine the type of cause of action available to such a claimant.
Further, exhibits 24 and 25 are photographic representations of the slope at different points in time. Exhibit 25 shows the slope as it appeared at the time appellants purchased their home, with a level area behind the house surfaced with gravel and demarcated by a split-rail fence. Exhibit 24 depicts the condition of the slope in the summer of 1994, by which time half of the gravel-surfaced area had collapsed, and the split rail fence had commenced a precipitous descent to the bottom of the ravine. These photographs, when considered in conjunction with the unequivocal input of Esser and the $28,500 estimate for removal of substandard fill, provided a more than sufficient predicate for appellants to pursue this matter with due diligence. Their failure to act in 1994, in this writer's view, did not toll the statute of limitations.
I also believe that the majority's reliance on the June 1995 discovery of repairs to the foundation of the house is misplaced. Those repairs do not control the analysis in this matter. Appellants' damages arose from the dumping of uncontrolled fill and the necessity of removing that fill in order to stabilize the slope that serves as their backyard. Appellants have proffered no evidence that the foundation of their home was in any way inadequate, or that deficiencies in the foundation gave rise to monetary losses. Appellants' claim relates solely to soil instability and the necessity of removing uncontrolled fill that appellees allegedly dumped on the property. Those issues were fully illuminated for appellants before the end of 1994. In this writer's view, appellants' reference to the repairs to the foundation is a diversion that the trial court elected to ignore in its determination as to when appellants should have discovered the fraud through the exercise of due diligence.